IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERYNN T. MESTAS,

        Plaintiff,

vs.

                                              No. 09-CV-1172-WJ/ACT

STATE OF NEW MEXICO
ENVIRONMENT DEPARTMENT
et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR QUALIFIED IMMUNITY**

THIS MATTER comes before the Court on Defendants' Motion for Qualified Immunity

(Doc. 24). Defendants Carlos Romero, Charles Lundstrom, Salomon Romero, John Rhoderick,

David Torres, Norman Norvelle, and Judy Bentley ("Defendants") move for dismissal of the

civil rights claim against them on the basis of qualified immunity. Having considered the parties'

briefs and applicable law, the Court finds that Defendants' motion is well taken and shall be

granted.

**BACKGROUND**

Plaintiff filed this employment discrimination lawsuit against her former employer, the

State of New Mexico Environment Department ("NMED"), and several supervisors and co-

employees, claiming she was subjected to a hostile work environment, retaliation, wrongful

discharge, and gender- and race-based harassment. The complaint brings causes of action under

42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New Mexico

Human Rights Act ("NMHRA"). The individual defendants now move to dismiss the claims for

civil rights violations arising under 42 U.S.C. § 1983 and the claim for punitive damages

(Counts X and XI of the complaint) on the basis of qualified immunity.

According to the complaint, Plaintiff was hired by NMED on January 12, 2008 and was an employee in good standing. At some point during her employment, Plaintiff reported her supervisor, Sal Misseri, for engaging in unlawful conduct, such as receiving bribes on the job. After making this report, Plaintiff began to experience workplace harassment in the form of derogatory remarks about her gender and race, other types of verbal abuse, and threats against her employment. Plaintiff alleges that each individual defendant at some point engaged in vindictive and harassing behavior directed towards Plaintiff.

When Plaintiff reported this treatment to the director of human resources, Judy Bentley, the abuse only worsened. Plaintiff was referred to as a "whistleblower," among other things. Plaintiff then filed a complaint of discrimination and retaliation with the EEOC, but her situation deteriorated even further after management was informed of this complaint. Events culminated in Plaintiff's termination on December 17, 2008 in a letter signed by Carlos Romero, for reasons alleged to be pretextual.

Count X of the complaint alleges that the wrongful discharge of Plaintiff committed by Carlos Romero violated Plaintiff's rights to due process and equal protection of the law. Count XI is a request for punitive damages, claiming that the civil rights violations were committed with malice. Neither count is brought against NMED or the individual defendants in their official capacities. Previously, the Court dismissed the Title VII and New Mexico Human Rights Act claims against the individual defendants (Doc. 37). The individual defendants have now moved to dismiss the remaining counts against them, arguing that Plaintiff has failed to establish that the individual defendants engaged in specific acts which deprived her of her constitutional rights to due process and equal protection, and further that Plaintiff has failed to make out a claim of due process or equal protection violations at all.

The Court agrees that the constitutional claims must be dismissed. Plaintiff has not alleged an equal protection claim with sufficient particularity against each individual defendant so as to defeat the defense of qualified immunity. Plaintiff has not established that she had a property interest in continued employment with NMED, and so she has no due process claim against any defendant. Therefore, Defendants' motion must be granted and the individual defendants must be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual allegations which, if true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Conclusory allegations of liability, without supporting factual content, are insufficient. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" does not meet the Rule 8 standard. *Id.* (quoting *Twombly*, 550 U.S. at 557); *see* Fed. R. Civ. P. 8(a)(2).

The Supreme Court has recommended a two-step process for testing the sufficiency of a complaint, independent of the subject matter of the case. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Second, a court may proceed to "determine whether [the well-pleaded factual allegations] plausibly give rise to an entitlement to relief." *Id.* In sum, "*Twombly* retired the *Conley* [*v. Gibson*, 355 U.S. 41 (1957)] no-set-of-facts test." *Id.* at 1944.

3

**DISCUSSION**

To defeat the defense of qualified immunity, a plaintiff must prove "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (internal quotation marks omitted). In a qualified immunity case, it is "particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Thus, if Plaintiff has failed to allege a violation of her constitutional rights based on the conduct of the individual defendants, those defendants are entitled to qualified immunity.

Plaintiff objects to the assertion of qualified immunity in a motion to dismiss, by pointing out that the cases cited by Defendants in support of their motion deal with qualified immunity in the summary judgment context, rather than on a motion to dismiss. Pl.'s Resp. at 7 (Doc. 32). However, it is not true that a motion to dismiss is an inappropriate stage at which to raise a qualified immunity defense, or that the qualified immunity standard differs when raised in a motion to dismiss. On the contrary, there is a "special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation." *Robbins*, 519 F.3d at 1249 (internal quotation marks omitted). Thus, Defendants' motion is an appropriate vehicle by which to assert the qualified immunity defense.

**I.      Equal Protection**

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Lindsey v. Thomson*, 275 F. App'x 744, 746 (10th Cir. 2007) (internal quotation marks omitted). To establish a violation under this clause requires proof of intentional discrimination.

*Washington v. Davis*, 426 U.S. 229, 239 (1976). "[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.' It instead involves a decision maker's undertaking a course of action 'because of,' not merely 'in spite of,' the action's adverse effects upon an identifiable group." *Iqbal*, 129 S. Ct. at 1948 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Plaintiff is a member of two protected classes, as a Hispanic female. *Reed v. Reed*, 404 U.S. 71 (1971); *Hernandez v. Texas*, 347 U.S. 475 (1954). Importantly, she is *not* a member of a protected class for purposes of the Equal Protection clause "by virtue of . . . having filed a previous complaint of prohibited discrimination." Compl. ¶ 56. Retaliation in an employment context is not a form of discrimination recognized by the Supreme Court as rising to the level of a constitutional violation. *See Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007) (collecting cases for the proposition that a purely Title VII claim, such as retaliation for filing a discrimination complaint, cannot form the basis for an equal protection violation).

The Equal Protection Clause prohibits discrimination on the basis of certain narrow constitutional categories, as recognized by Supreme Court precedent. In this way, it operates under a much more restrictive definition of "discrimination" than does Title VII. That is, employment discrimination under Title VII along with other relevant federal statutes covers discrimination on the basis of such broad categories as sex, pregnancy, disability, age, race, color, religion, or national origin. As interpreted by the federal courts, this definition of discrimination covers sexual harassment, and it prevents employers from retaliating against any employee because she opposes such discrimination, files a charge of discrimination, or participates in the investigation or litigation of a discrimination charge or lawsuit. Therefore, it is self-evident that a complaint that successfully alleges a colorable Title VII claim does not automatically state a viable equal protection claim.

Facts that state a Title VII claim cannot simply bootstrap a plaintiff into a viable

constitutional claim. Reliance on retaliation in stating an equal protection claim in paragraph 56

is illustrative of why this complaint does not state a viable constitutional claim in general. There

are only two paragraphs in the entire facts section of the complaint which allege intentional

discrimination against Plaintiff on the basis of race and gender: paragraphs 28 and 29, which

allege that "[s]imilarly-situated males [and non-Hispanic employees] were treated in a

discriminatorily more favorable manner than Plaintiff." Doc. 1 at 7.

Problematically, as Defendants point out, these allegations do not contain any indication

of conduct on the part of the individual defendants. A nexus between the conduct of the

defendants and the alleged constitutional violation must be clearly alleged in the complaint.

*Meade v. Grubbs*, 841 F.2d 1512, 1527-27 (10th Cir. 1988) (requiring an affirmative link

between the alleged constitutional deprivation and any conduct by defendants); *see also Robbins*,

519 F.3d at 1250 (allegations concerning each individual defendant are particularly important for

qualified immunity defense).

To the extent that Plaintiff's response to the instant motion discusses only alleged

discriminatory conduct on the part of two defendants, Judy Bentley and Carlos Romero, she

seems to be conceding that the other individual defendants have not violated her constitutional

right to equal protection. Furthermore, in the absence of allegations in the complaint establishing

that each of the individual defendants held supervisory authority over Plaintiff, their conduct is

not state action and thus not actionable under the equal protection clause. *Noland v. McAdoo*, 39

F.3d 269, 271 (10th Cir. 1994). In addition, supervisors cannot be held liable for subordinates'

harassment absent allegations of an institutional practice or policy, or deliberate indifference.

*Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992). While Plaintiff's brief

covers many of these issues, her complaint itself noticeably lacks any of these allegations.[1]

Therefore, Defendants Charles Lundstrom, Salomon Romero, John Rhoderick, David Torres,

and Norman Norvelle must be dismissed.

With regard to Defendants Judy Bentley and Carlos Romero, the complaint does not state

that they caused Plaintiff to be wrongfully terminated because of intentional discrimination on

the basis of Plaintiff's race and/or gender. It states merely that they wrongfully terminated

Plaintiff and thereby violated her right to equal protection of the laws, thus implying that the

wrongful termination by itself was the constitutional violation. Compl. ¶ 55. As discussed above,

wrongful termination on the basis of unlawful retaliation is a Title VII claim—not an equal

protection claim. In short, the complaint clearly states a claim against NMED under Title VII.

However, the equal protection violations are less clear and not well plead, and so Defendants are

entitled to qualified immunity.

## II.     Due Process

"'[T]o prevail on either a procedural or substantive due process claim, a plaintiff must

first establish that a defendant's actions deprived plaintiff of a protectible property interest.'"

*Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (quoting *Hyde Park Co. v. Santa Fe*

*City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)). A "property interest" is created by and

defined with reference to state law. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Plaintiff

does not clarify in the complaint or her response to the instant motion whether the right at issue

---

[1] As just one example, Plaintiff's Response indicates that "[t]he § 1983 claim against
Defendant Bentley include [sic] allegations to the effect that she was deliberately indifferent" to
Plaintiff's constitutional right to a public workplace free of gender- and/or race-based
harassment. Pl.'s Resp. at 5 (Doc. 32). As support for this assertion, she cites to paragraph 27 of
the complaint, which includes no such allegations concerning Judy Bentley's state of mind:
"Plaintiff reported the abuse to Defendant Judy Bentley, Director of Human Resources, and
thereafter the abuse directed against her began to accelerate, and she was referred to, among
other things, as a 'whistleblower' . . . ." Compl. ¶ 27 (Doc. 1 at 7).

is one to substantive due process, or procedural due process. For the purposes of this case, however, the distinction is irrelevant. Plaintiff has alleged no facts in the complaint permitting an inference that she has a protectible property interest in continued employment at NMED. To the contrary, on the face of the complaint it is clear that she cannot prevail on this claim.

In New Mexico, public employees have a protected property interest in employment only if they have an implied or express right to continued employment. *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). New Mexico public employment, by statute, operates pursuant to a system of at-will employment for a probationary period of one year. N.M.S.A. § 10-9-13(E) (1978). At-will employment may be terminated by the employer for any reason, or no reason at all. *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 779 (N.M. 1993).

Plaintiff argues that she was terminated for reasons that violate New Mexico public policy, thus placing her within an exception to the at-will employment doctrine. While being terminated for reasons that violate New Mexico public policy may give rise to an action for wrongful termination under state law, it does not create a constitutionally protected property interest where none exists in the first place. Plaintiff has not cited a case that says otherwise. To the contrary, the Tenth Circuit has noted that, under New Mexico law, "an employee's at-will status forecloses a property interest claim because the employee has no legitimate expectation of future employment." *Scarborough*, 935 F.2d at 1170. Similarly, Plaintiff's citation to *Sciolino v. City of Newport News*, 480 F.3d 642 (4th Cir. 2007), is misplaced because *Sciolino* concerned allegations of fraud raised against the terminated employee. The court in *Sciolino* thought that the employee's liberty interest may be implicated because the false allegations could affect his ability to secure employment in the future.  Even if *Sciolino* constituted persuasive authority, Plaintiff has not alleged that she was terminated amid allegations of fraud conducted on her part, or anything that would threaten her liberty interest in obtaining future employment.

It is clear from the face of the complaint that Plaintiff was discharged less than a year after she was hired. Compl. ¶¶ 23, 33 (Doc. 1). She therefore had no property interest in her employment, and cannot state a claim for violation of her due process rights. Because Defendants have not violated Plaintiff's constitutional right to due process of law, they are entitled to qualified immunity.

### III.    Punitive Damages

In the absence of any viable claims in this lawsuit directed against the individual defendants in their personal capacities, the punitive damages claim cannot stand. The claim for punitive damages is not an independent source of potential liability for the individual defendants; it is simply an allegation that the other actions which form the basis for a defendant's liability were committed intentionally and willfully. The parties agree that a claim for punitive damages cannot stand against an entity such as NMED. Therefore, Count XI must be dismissed.

**THEREFORE, IT IS ORDERED THAT** Defendants' Motion for Qualified Immunity (Doc. 24) is GRANTED. Counts IX and X are hereby DISMISSED WITH PREJUDICE, and Defendants Carlos Romero, Judy Bentley, Charles Lundstrom, Salomon Romero, John Rhoderick, David Torres, and Norman Norvelle are hereby DISMISSED from this lawsuit.

_____

UNITED STATES DISTRICT JUDGE

9