# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EDRYNN MESTAS,

       Plaintiff,

v.                                                                     NO. 09-CV-1172 WJ/ACT

STATE OF NEW MEXICO ENVIRONMENT
DEPARTMENT, ENVIRONMENTAL HEALTH
DIVISION, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING
## PLAINTIFF LEAVE TO AMEND COMPLAINT

THIS MATTER comes before the Court on Plaintiff's Motion for Leave to Amend Complaint (**doc. 82**) filed October 6, 2011. Having considered the parties' briefs and applicable law, the Court finds that Plaintiff's motion is well taken and will be GRANTED.

### Background

According to the Complaint, Plaintiff was hired by NMED on January 12, 2008 and was an employee in good standing. At some point during her employment, Plaintiff reported her supervisor, Sal Misseri, for engaging in unlawful conduct, such as receiving bribes on the job. After making this report, Plaintiff began to experience workplace harassment in the form of derogatory remarks about her gender and race, other types of verbal abuse, and threats against her employment.

When Plaintiff reported this treatment to the director of human resources, Judy Bentley, the abuse only worsened. Plaintiff was referred to as a "whistleblower," among other things. Plaintiff then filed a complaint of discrimination and retaliation with the EEOC, but her situation

deteriorated even further after management was informed of this complaint. Events culminated in Plaintiff's termination on December 17, 2008 in a letter signed by Carlos Romero, for reasons alleged to be pretextual.

Plaintiff filed this employment discrimination lawsuit against her former employer, the State of New Mexico Environment Department ("NMED"), and several supervisors and co-employees, claiming she was subjected to a hostile work environment, retaliation, wrongful discharge, and gender- and race-based harassment. The original complaint brings causes of action under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New Mexico Human Rights Act ("NMHRA").

The Court has granted two dispositive motions in this matter. On December 14, 2010, the Court granted Defendants' Motion to Dismiss Title VII and New Mexico Human Rights Claims Against Individual Defendants. (Doc. 37.) Subsequently, on January 12, 2011, the Court granted Defendants' Motion for Qualified Immunity. (Doc. 43.) As a result of these orders, the individually named Defendants have been dismissed from the lawsuit, and the only remaining claims from the original Complaint are Counts I through VI asserting violations of Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act against Defendant NMED.

Plaintiff now seeks leave to amend her Complaint to add a claim for violations of the New Mexico Whistleblower Protection Act ("WPA"), N.M. STAT. ANN. § 10-16C-1, et seq. (1978), against Defendant NMED and a civil rights claim under 42 U.S.C. § 1983 for a violation of Plaintiff's First Amendment rights against Charles Lundstrom (one of the individual Defendants who has been dismissed from this lawsuit pursuant to this Court's order on January 12, 2011) in his individual capacity.

**Discussion**

The grant or denial of leave to amend under Fed.R.Civ.P. 15(a) is a matter within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although leave to amend is generally freely granted, it will not be permitted where the proposed amendment will be futile, or where the request is untimely and unduly prejudicial to the opposing party. *Castleglen, Inc., et al. v. R.T.C.*, 984 F.2d 1571 (10th Cir. 1993). The Tenth Circuit, construing the Supreme Court's instruction in *Foman*, has provided further guidance to the district courts by suggesting that a trial court's refusal to grant leave to amend should normally be justified on such factors as a showing of undue delay, undue prejudice to the non-moving party, futility of the amendment, or bad faith of the moving party. *Frank v. U.S. West*, 3 F.3d 1357, 1365 (10th Cir.1993). Moreover, federal law favors the resolution of legal claims on the merits, *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1272 (10th Cir. 2001), and the purpose of the Federal Rules of Civil Procedure is to encourage final dispositions on the merits. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir.1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.")).

Defendants do not argue that any bad faith exists, and so the Court need not address that factor. Accordingly the Court will proceed to examine whether a sufficient basis exists to deny leave to amend based on undue delay, prejudice to Defendants, or futility of amendment.

**I.     Undue Delay**

Undue delay of a plaintiff's motion to amend "in itself can be a sufficient reason to deny

leave to amend, particularly when the movant provides no adequate explanation for the delay." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir.1995).  No finding of prejudice to the opposing party is required.  *Woolsey v. Marion Lab., Inc.*, 934 F.2d 1452, 1462 (10th Cir.1991).  A key element in a finding of undue delay is whether "the party filing the motion has no adequate explanation for the delay."  *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir.1993); *see also  Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir.1994) ("[U]nexplained delay alone justifies the district court's discretionary decision.").

In this case, the original Complaint was filed on December 12, 2009, nearly two years ago.  The WPA was enacted in May of 2010, around 18 months ago.  Therefore, the Court acknowledges that the length of the delay is substantial.

Plaintiff attributes the delay to her difficulties with her previous attorneys.  Her original attorney, Dennis Montoya, was the subject of attorney disciplinary proceedings by the State Bar of New Mexico and has subsequently been suspended from practicing in state and federal court.  Upon retaining her current counsel (see the Court's Order, doc. 80, filed September 20, 2011), the instant motion was promptly filed (doc. 82, filed October 6, 2011), showing proper diligence and expeditiousness.  Although the Court certainly does not as a general matter consider it appropriate to give parties a "mulligan" upon retention of new counsel, in this case the Court does not find that there are sufficient grounds for denial of leave to amend based solely on undue and unexplained delay.

## II.     Prejudice

The existence of prejudice to the opposing party is a sufficient basis to deny a motion to amend.  *Phelps v. Hamilton*, 166 F.R.D. 489, 491 (D.Kan.1996).  The party opposing the amendment has the burden to show some specific way in which it will be prejudiced.  *Id.*

4

Defendants argue that they are subject to two sources of prejudice. First, they argue that the expanded factual allegations in the requested Amended Complaint will cause them to have to "re-visit all earlier discovery" and that they create an "entirely new lawsuit." This argument is not convincing. While the factual allegations in Plaintiff's requested Amended Complaint are significantly expanded in detail from those in the original Complaint, they fall within the scope of the original allegations. Additionally, Defendants received notice of the requested Amended Complaint before the close of discovery, and before the depositions of the most important parties—Plaintiff and Charles Lundstrom—had been concluded. Therefore, there is not sufficient prejudice on these grounds to justify a denial of leave to amend.

Defendants' second allegation of prejudice is that the Court has already granted Defendants' dispositive motion based on qualified immunity of Charles Lundstrom, and therefore allowing Lundstrom to be brought back into the case in his personal capacity will require the subject of qualified immunity to be revisited and re-briefed.

While there is some weight to this objection, Defendants do not argue that this count will be futile because it will fail to state a claim, as did Plaintiff's previous allegations against the individual Defendants. While Defendants have received the dismissal of claims based on qualified immunity, they did not address a claim essentially similar to the contested claim based on the First Amendment. Therefore, Defendants will have no additional work imposed upon them by the delay of Plaintiff's request to amend the Complaint. Charles Lundstrom's entitlement to qualified immunity as to the alleged violation of Plaintiff's First Amendment rights is a novel issue, and Defendants have made no showing that it will prove duplicative of any of the legal issues previously briefed by the parties or ruled upon by the Court. While it obviously imposes additional work onto Defendants, it is the same amount of work that would

have been imposed had this claim been included in the original Complaint.

Therefore, the Court finds that there is not sufficient prejudice to Defendants to justify a denial of Plaintiff's motion for leave to amend.

### III.   Futility

Leave to amend a complaint may be refused if the amendment would be futile.  *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."  *Id.*

Defendants argue that the WPA count in Plaintiff's requested Amended Complaint is futile because retroactive application of the WPA to the events at issue in this lawsuit would violate the constitutional prohibition of *ex post facto* laws.  U.S. CONST. art. I, § 9, cl. 3.

Both parties agree that the WPA, enacted in May of 2010, contemplates retroactive application to conduct occurring after July 1, 2008.  The applicable conduct in this case, termination of Plaintiff, occurred in December of 2008.  Therefore Plaintiff's WPA claim, if allowed, would involve retroactive application of the statute.  The parties agree that whether the *ex post facto* clause prohibits Plaintiff's suit turns on whether the penalties of the WPA should be considered "punitive" in the constitutional analysis.

> In an *ex post facto* analysis, a court must
>
> ascertain whether the legislature meant the statute to establish 'civil' proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, [the court] must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the legislature's] intention to deem it 'civil.'  Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

*Smith v. Doe*, 538 U.S. 84, 92 (2003) (internal quotations and citations omitted).

A. *Legislative Intent*

As to the threshold question of intent, Defendants have provided the Court with nothing that would indicate an intent by the New Mexico State Legislature to impose punishment. The statute states that it provides a "civil action" to employees. *See* N.M. STAT. ANN. § 10-16C-4, -6 (1978). In the absence of contrary indicators of legislative intent, the Court must conclude that the legislature intended to create a cause of action as part of a regulatory scheme that is civil and nonpunitive.

B. Mendoza-Martinez *Factors*

The Court next moves to the question of whether the WPA is "so punitive in purpose or effect as to negate [the legislature's] intention to deem it 'civil.'" *Smith*, 538 U.S. at 92. Here, Defendants must carry a heavy burden, because "only the clearest proof" will overcome proper deference to the legislature's intent. In deciding whether, contrary to a legislature's intent, a statute is sufficiently punitive in purpose or effect to violate the *ex post facto* clause, a court must consider seven factors: (1) Whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, (7) and whether it appears excessive in relation to the alternative purpose assigned. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963).

Defendants argue that the damages provision of the WPA is so punitive as to make the WPA, contrary to the legislature's intent, punitive rather than civil. The WPA provides that:

> A public employer that violates the provisions of the Whistleblower Protection

>Act shall be liable to the public employee for actual damages, reinstatement with the same seniority status that the employee would have had but for the violation, two times the amount of back pay with interest on the back pay and compensation for any special damage sustained as a result of the violation. In addition, an employer shall be required to pay the litigation costs and reasonable attorney fees of the employee.

N.M. STAT. ANN. § 10-16C-4.A (1978).  The Court will proceed to evaluate the WPA according to the *Mendoza-Martinez* factors.

### 1.  Affirmative Disability or Restraint?

Defendants refrain from arguing that the WPA imposes an affirmative disability or restraint, and they are correct so to refrain, because "monetary fines do not constitute an 'affirmative disability or restraint.'"  *Simpson v. Bouker*, 249 F.3d 1204, 1213 (10th Cir. 2001).  This factor weighs against a finding that the WPA is punitive.

### 2.  Historically Regarded As Punishment?

Again, Defendants omit any argument that the awards under the WPA have historically been regarded as punishment, and the Court agrees, because "courts have not historically viewed monetary penalties as punishment."  *Id.*  Therefore this factor too weighs against a finding that the WPA is punitive.

### 3.  Scienter Required?

The WPA prohibits public employers from "tak[ing] any retaliatory action against a public employee because the public employee" engages in whistleblowing activity.  N.M. STAT. ANN. § 10-16C-3 (1978).  The operative term "because" shows that knowledge and motivation are implicitly required.  In a different retaliatory discharge context, the New Mexico Court of Appeals reasoned that "the employer's motive is a key element of retaliatory discharge.  Clearly, an employer cannot fire an employee in retaliation for actions of which the employer is

unaware." *Weidler v. Big J Enterprises, Inc.*, 953 P.2d 1089, 1097 (N.M. Ct. App. 1997) (internal quotations and citations omitted).

>Additionally, the WPA provides an affirmative defense to employers:
>
>It shall be an affirmative defense to a civil action brought pursuant to this section that the action taken by a public employer against a public employee was due to the employee's misconduct, the employee's poor job performance, a reduction in work force or other legitimate business purpose unrelated to conduct prohibited pursuant to the Whistleblower Protection Act and that *retaliatory action was not a motivating factor*.

N.M. STAT. ANN. § 10-16C-4.B (1978) (emphasis added). If it is an affirmative defense that retaliatory action was not a motivating factor, then for the claim to stand, retaliatory action must in fact be a motivating factor. Thus, the Court concludes that the WPA award of damages only comes into play on a finding of *scienter*, and this element weighs toward a finding that the WPA is punitive.

### 4. Retribution and Deterrence?

The WPA's authorization of damages for violations may indeed have a deterrent effect, however that deterrence is not necessarily punitive in nature. The U.S. Supreme Court has recognized that imposing monetary penalties "will deter others from emulating petitioners' conduct, a traditional goal of criminal punishment. But the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." *Hudson v. U.S.*, 522 U.S. 93, 105 (1997) (internal quotations omitted). Therefore, though in this case there will likely be a deterrent effect from the damage award provisions of the WPA, that deterrence does not move the character of the WPA towards punishment, because any deterrent effects serve the civil regulatory purpose of the statute, and there is no additional evidence that any aspect of the WPA is aimed at retribution. Therefore this factor weighs

against a finding that the WPA is punitive rather than civil.

### 5. Behavior Already a Crime?

Defendants make no argument that the conduct prohibited by the WPA is already a crime, and therefore the Court considers them to have conceded that this factor weighs against a finding that the WPA is punitive.

### 6. Alternative Purpose Assigned?

The WPA damages provision is formulated in compensatory terms, and does not contain any provision for punitive damages. Therefore, the purpose of the damages provision is on its face compensatory rather than punitive. This factor weighs against a finding that the WPA is punitive.

### 7. Excessive In Relation to Alternative Purpose?

Defendants' argument essentially boils down to an assertion that an award of double back-pay is so excessive as to be clearly punitive in nature. Despite Defendants' constant references to "punitive and exemplary damages," the Court cannot locate any such language in the WPA. As quoted above, the WPA awards actual damages, reinstatement, double back pay with interest, compensation for any special damage sustained as a result of the violation, and litigation costs and reasonable attorney fees. Among that litany, the only component that could be viewed as more than strictly compensatory is the doubling of back pay. However, this is not the "treble damages" that courts have found problematic in other contexts. In fact, there is no indication that the Court can find, nor any that Defendants bring forward, that the legislature intended this provision to be other than compensatory. At the least, any punitive nature of the double back pay award is not excessive in comparison to the strictly compensatory components. Therefore this factor weighs against a finding that the WPA is punitive rather than civil in

nature.

After considering the *Mendoza-Martinez* factors, the Court concludes that Defendants have not come forward with the requisite "clear proof" that the WPA is punitive, and therefore the Court finds that retroactive application of the WPA would not violate the *ex post facto* clause, and therefore that inclusion of Plaintiff's WPA claim in an amended complaint would not be futile.

## Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs Motion for Leave to file Amended Complaint. The Court recommends the matter to the consideration of U.S. Magistrate Judge Alan C. Torgerson, if the parties desire any additional discovery or adjustment of the case deadlines as a result of the Court's ruling.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE